BRAUN *v.* McPHERSON.

1. ESCHEAT—ADMINISTRATOR—APPOINTMENT—PRELIMINARY NOTICE.
   Appointment of administrator of assets of persons having dormant bank accounts which have escheated to the State *held*, valid notwithstanding omission of preliminary notice of hearing (3 Comp. Laws 1929, § 13455 *et seq.*, as amended by Acts Nos. 45, 171, Pub. Acts 1933, §§ 13464, 13467).

2. STATUTES—AMENDMENT—CONSTRUCTION.
   If constitutionally valid, an amended statute should be read and enforced in accordance with its terms, not in conformity to the conflicting provisions embodied in the statute prior to amendment.

3. SAME—CONSTITUTIONAL LAW—SUBJECT-MATTER.
   The matter of first importance in the determination of the constitutionality of a statute is the subject-matter to which the statute pertains or is applicable.

4. ESCHEAT—DEFINITION.
   Escheat is a term signifying a falling of a decedent's estate into the general property of the State on his death intestate and without lawful heirs and is applied indifferently to all kinds of property of whatever nature.

5. SAME—SOLE PROPERTY RIGHT IN STATE.
   No person or organization has any property right in the subject-matter of an escheat except the State.

6. SAME—ADMINISTRATOR—APPOINTMENT—PRELIMINARY NOTICE—POSSESSION.
   One in possession of escheated property has no right to preliminary notice of the appointment of an administrator of the estate of which it may form a part.

7. SAME—ADMINISTRATOR—APPOINTMENT—DUE PROCESS.
   Statute providing procedure for escheats which dispensed with preliminary notice of hearing as to appointment of administrator *held*, not a deprivation of property rights without due process of law, where publication of notice of such appoint-

ment is required within 30 days thereafter and further publication for two months prior to date of final hearing for closing the estate since the State is the sole owner of property rights therein (3 Comp. Laws 1929, § 13455 *et seq.*, as amended by Acts Nos. 45, 171, Pub. Acts 1933).

8. SAME — ADMINISTRATOR — APPOINTMENT — DUE PROCESS — LIVING PERSON OR HEIRS.

Fact that one alleged to be a deceased person whose property is claimed by the State may in fact be living or that there may be heirs or devisees of such person *held,* not to render escheat law, permitting appointment of administrator without a preliminary notice of hearing, invalid as deprivation of property without due process, since there would be no escheat in such case (3 Comp. Laws 1929, § 13455 *et seq.*, as amended by Acts Nos. 45, 171, Pub. Acts 1933).

9. STATUTES — TEST OF VALIDITY.

The validity of a statute ought not to be tested by hypothetically applying it to facts or conditions to which it has no application.

10. ESCHEAT — STATE AS CONSERVATOR OF PRIMA FACIE ESCHEAT.

Escheat proceedings are not solely for the benefit of the State but it takes possession of a *prima facie* escheat in the capacity of a conservator for benefit of any person lawfully entitled thereto for period of 10 years, hence mere appointment of an administrator of such estate does not finally adjudicate property rights of any person therein (3 Comp. Laws 1929, § 13455 *et seq.*, as amended by Acts Nos. 45, 171, Pub. Acts 1933, § 13476).

11. SAME — STATUTES — CONSTITUTIONAL LAW.

Statute providing procedure relative to escheats *held,* not invalid as a whole because it may contain unconstitutional provisions subjecting the owner to a burden of expense since they may be eliminated (3 Comp. Laws 1929, § 13455 *et seq.*, as amended by Acts Nos. 45, 171, Pub. Acts 1933).

12. SAME — STATUTES — CONSTITUTIONAL LAW — POSSESSION.

Statute providing procedure relative to alleged escheated property *held,* not unconstitutional because possession thereof may be taken after merely a *prima facie* showing is made that it is escheated property (3 Comp. Laws 1929, § 13455 *et seq.*, as amended by Acts Nos. 45, 171, Pub. Acts 1933).

13. Same—Statutes—Constitutional Law—Notice.

Statute relative to escheats which provides for notice to any interested parties, if there are such, before final adjudication of the estate *held*, not unconstitutional because of lack of publication prior to appointment of an administrator (3 Comp. Laws 1929, § 13455 *et seq.*, as amended by Acts Nos. 45, 171, Pub. Acts 1933).

14. Constitutional Law—Due Process—Bank Receivership—Filing Claims—Deposits—Escheats.

Where persons who made deposits in a bank failed to file claims within period allowed therefor in bank receivership, they and receiver of the bank are in no position to claim deprivation of property without due process because, without preliminary notice of hearing, an administrator was appointed as to such assets as escheated property (3 Comp. Laws 1929, §§ 11961, 11962, 13455 *et seq.*, as amended by Acts Nos. 45, 171, Pub. Acts 1933).

15. Receivers—Consent to Sue—Indorsement on Declaration.

Indorsement on declaration that leave was thereby granted to file suit against receiver by one of the circuit judges of the court in which bank receivership was then pending *held*, a sufficient compliance with practice requiring consent of court to bring suit against a receiver.

16. Banks and Banking—Escheated Deposits—Remedies of Administrator.

Action at law against bank receiver by administrator of alleged escheated bank deposits *held*, an optional procedure although perhaps preferable procedure would be by way of petition to intervene in the receivership proceeding, the administrator having full power to adopt a proper form of action (3 Comp. Laws 1929, § 13455 *et seq.*, as amended by Acts Nos. 45, 171, Pub. Acts 1933, § 13464).

17. Appeal and Error—Questions Reviewable.

Upon review of dismissal of action by administrator for alleged escheated bank deposits on ground his appointment and procedure in starting suit against bank's receiver were irregular and unconstitutional, question as to whether or not permission to sue was improvidently granted is not before Supreme Court.

18. Banks and Banking—Receivers—Demand—Action.

Demand by administrator of alleged escheated deposits in an insolvent bank made before suit commenced against bank receiver *held*, sufficient.

19. SAME—RECEIVERS—JUDGMENT—ESCHEATED DEPOSITS—RATABLE DIVIDENDS.

> Since State's claim against receiver of an insolvent bank for alleged escheated deposits is not to be preferred to that of other creditors of the insolvent, the court should exercise its inherent power to stay execution on judgment obtained in action at law, and direct that judgment be filed as an adjudicated claim against the receiver on which he should pay ratable dividends as on other like claims (3 Comp. Laws 1929, § 13455 *et seq.*, as amended by Acts Nos. 45, 171, Pub. Acts 1933, § 13962).

20. SAME—RECEIVERS—ESCHEAT.

> The receiver stands in the position of the bank with respect to deposits escheated to the State.

21. SAME—OTHER CREDITORS—INSOLVENCY—ESCHEAT.

> Insolvency of bank does not give other creditors vested rights in escheated funds of which the bank had possession but which are now in the hands of its receiver (3 Comp. Laws 1929, § 13962).

22. COSTS—PUBLIC MATTER—ESCHEAT.

> No costs are awarded upon vacation of judgment dismissing action by administrator of escheated bank deposits against bank's receiver where matter involved is of public importance.

FEAD, WIEST and BUSHNELL, JJ., dissenting.

Appeal from Oakland; Doty (Frank L.), J. Submitted June 9, 1936. (Docket No. 111, Calendar No. 39,048.) Decided October 5, 1936.

Assumpsit by Carl A. Braun, administrator of the estates of Charles L. Adams and certain other disappeared or missing persons, against Hugh A. McPherson, receiver of the Pontiac Commercial & Savings Bank, to recover deposits under the escheated estates statutes. From order dismissing declaration, plaintiff appeals. Reversed and remanded.

*Glenn C. Gillespie,* for plaintiff.

*Patterson & Patterson,* for defendant.

North, C. J.  Plaintiff's suit was dismissed by the circuit judge on defendant's motion.  The reasons for dismissal as stated in the judge's opinion are:

"We conclude that the appointment of plaintiff as administrator in the probate court and the procedure in starting suit are irregular and that Act No. 171, Pub. Acts 1933 is unconstitutional."

Mr. Justice Fead has written for affirmance, holding that: "The principal question is whether Act No. 45, Pub. Acts 1933 permits appointment of administrator without preliminary notice of hearing." The conclusion reached is that the amended statute requires "preliminary notice;" and that to hold otherwise would render the act violative of the due process clause of the Constitution.  I am constrained to disagree with each of these conclusions.

That the legislature by Act No. 45, § 10a, Pub. Acts 1933, intended to dispense with "preliminary notice" conclusively appears from the unequivocal words of that section.  After specifying conditions which will *prima facie* establish an escheat, providing for the appointment of an administrator upon the application of the attorney general, and for publication of notice of granting administration within 30 days thereafter, and for further publication for two months prior to the date of final hearing for closing the estate, the section specifies:

"Provided further, that no other or additional proof or publication shall be required for the purposes of escheat under section 10 and 13 of this act except as herein provided."

Notwithstanding this definite provision, as I understand my Brother's opinion he holds that because

of the provisions contained in sections 10 and 13 (3 Comp. Laws 1929, §§ 13464, 13467) it is still requisite to publish preliminary notice of the appointment of an administrator. In this connection he states that to hold otherwise may ''destroy the harmony of probate practice (heretofore) adopted by the escheat law.'' It is of little moment whether the procedure has been changed by the more recent statutory enactment. If constitutionally valid, the amended statute should be read and enforced in accordance with its terms, not in conformity to the conflicting provisions embodied in the statute prior to amendment. The added sections constitute an amendment; and seem to me to embody language ''definitely abrogating advance notice of hearing of the appointment of administrator.'' To hold otherwise is to nullify and render meaningless the above quoted portion of section 10a. I think the quoted provision means what it says and that it should not be read out of the amended act. *MacQueen* v. *Port Huron City Com'n,* 194 Mich. 328; *Village of Kingsford* v. *Cudlip,* 258 Mich. 144. In that event the statutory procedure would require no notice by publication prior to the notice of granting administration within 30 days after the administrator is appointed.

Is the amended act, construed as above, constitutional? In passing upon the constitutionality of a statute, it is of first importance to be mindful of the subject-matter to which the statute pertains or is applicable. This amended statute has to do with escheats. What is an escheat?

''The term has come to signify a falling of a decedent's estate into the general property of the State on his death intestate and without lawful heirs, and is applied indifferently to all kinds of property of whatever nature.'' 21 C. J. p. 848.

From the foregoing it appears, and necessarily so, that no person or organization has any property right in the subject-matter of an escheat except the State. Otherwise it could not be an escheat. The State being the moving party in this proceeding, it is difficult to conceive who is deprived of due process of law by failure to give ''preliminary notice'' of the appointment of an administrator. If it be said that one in possession of the escheated property has at least the right of possession, even so such person has no right to preliminary notice of the appointment of an administrator. When the owner of escheated property dies, or is legally presumed dead, no one save the State has a property interest in the escheat. Giving preliminary notice when there is no one to be notified is surely an idle ceremony. Proceeding to the appointment of the administrator deprives no one of property rights without due process of law. In other words that constitutional provision is not applicable to escheat proceedings instituted by the State, and from the very nature of an escheat cannot be applicable.

But it is said an alleged deceased person whose property is claimed by the State as an escheat may in fact be living or there may be heirs or devisees of such person. In that event there is no escheat. The escheat statute has no application to such a factual situation. Validity of the statute ought not to be tested by hypothetically applying it to facts or conditions to which it has no application. Before final adjudication of an escheated estate the statute provides for publication and thus notice is given to all the world. Following the requirement for publication of the appointment of the administrator, the statute provides:

''That additional publications shall be made once each calendar month for two months prior to the

date of the final hearing for the closing of the estate.'' Act No. 45, § 10a, Pub. Acts 1933.

Escheat proceedings are not solely for the benefit of the State. Instead the statutory proceeding clearly contemplates that under certain defined conditions property becomes *prima facie* an escheat. Thereupon the State takes possession of the property or the proceeds thereof in the capacity of a conservator for the benefit of any person lawfully entitled to it. Any time within 10 years the State will account to anyone lawfully entitled to the property. 3 Comp. Laws 1929, § 13476. Appointing an administrator of an alleged escheated estate does not finally adjudicate the property rights of any person in such estate.

I am not impressed with the suggestion that the statute subjects the owner of the alleged escheated property to a burden of expense. If there are provisions of that character which violate a constitutional right, they may be eliminated from the statute without rendering invalid the whole statute or the provisions herein particularly involved. 1 Cooley's Constitutional Limitations (8th Ed.), pps. 359–361. Nor do I think the statutory provision unconstitutional merely because after a *prima facie* showing is made to the court possession of the alleged escheated property may be taken. Even if we pass the obvious fact that the property by operation of law escheated to the State immediately upon the death (actual or legally presumed) of the owner and, therefore, no other person has a right to it; still the provision as to taking possession before final adjudication is not without many parallels in the law. The common practice in attachment suits is to seize possession of the defendant's property before any legal process is served upon him. In garnishment the defendant's property is generally impounded before he is served with process. But one would hardly attack the con-

stitutionality of statutes providing for such procedure on the ground that they "abrogate the fundamental right of a person to notice of a proceeding affecting his property *before* it is taken into the control of another." As noted above, the statute under consideration provides for notice to any interested parties, if there are such, before final adjudication of an escheated estate. I think the statutory procedure is not unconstitutional because of lack of publication prior to the appointment of an administrator.

Entirely apart from the foregoing it may be noted that for another reason those who made the deposits here in question, or those who might claim under them, lost their right to assert any title to the property involved prior to the appointment of the administrator and, therefore, they are not in position to claim that by this proceeding they were deprived of their property without due process of law. This is true because the receiver of the bank prior to the escheat proceedings had fully conformed with the statutory requirements as to notice of filing claims against the property in the hands of the receiver. 3 Comp. Laws 1929, §§ 11961, 11962. The court's order for the filing of claims contained the following provision:

"It is further ordered that in default of any creditor filing proof of claim within ninety (90) days from the date hereof (Sept. 24, 1931), the receiver may proceed with the distribution of said estate without reference to the claims not proved when dividends are paid or distribution is made."

The time had gone by within which claims could have been filed, except by grace of the court in which the receivership is pending. In this way it had been

adjudicated that the parties who deposited the money in these respective accounts, or anyone claiming through them, had lost all right to assert a claim as a creditor against the property in the hands of the receiver. The actual question here involved is whether other creditors of the insolvent bank through the receivership will receive the money involved, or shall it pass to the State as an escheat. The original depositors in these various accounts are not interested in that question. They have had their day in court and have failed to file a claim against the receiver. Therefore, they are in no position to attack the validity of the present proceedings on the ground of a lack of due process of law. If such depositors cannot make that claim, surely there is neither equitable nor legal reason for permitting the receiver to assert it.

Appellant challenges the right of plaintiff to bring this suit at law against the receiver. Admittedly a receiver cannot be sued except with the consent of the court in which the receivership is pending. In the instant case, before filing the declaration as commencement of suit, plaintiff presented the declaration to one of the circuit judges of the court in which the receivership was pending and the judge indorsed on the declaration the following:

"Leave is hereby granted to file the within suit against Hugh A. McPherson, receiver of the Pontiac Commercial & Savings Bank.
                              "RUSSELL H. HOLLAND,
                                    "Circuit Judge."

This was sufficient compliance with our practice requiring consent of the court to bring suit against a receiver.

Appellant stresses the contention that in any event proper procedure herein was not the bringing of a suit at law, but instead by obtaining permission from the court to intervene in the receivership proceedings and presentation of plaintiff's claim for allowance therein. It may be conceded that petitioning to intervene and, if intervention is permitted, filing a claim in the receivership proceedings is the more common and perhaps preferable procedure; but it is not exclusive. We think Act No. 171, Pub. Acts 1933, provides merely a procedure which is optional with the attorney general or the public administrator. 3 Comp. Laws 1929, § 13464, hereinafter quoted, gives full power to the administrator to adopt a proper form of action.

"No suit could be brought by or against the receiver without leave of the court appointing him; but that court should in all cases permit the party having a claim to intervene in the proceeding, and make proof of it, when he shows a probable cause of action, *and in appropriate cases the trial should be upon the law side.*" *Citizens' Savings Bank* v. *Ingham Circuit Judge,* 98 Mich. 173.

It is said in appellee's brief:

"The court, after a partial hearing, issued an order setting aside a prior order granting leave to bring the suit upon the ground that it had been improvidently issued."

*Citizens' Commercial & Savings Bank* v. *Bay Circuit Judge,* 110 Mich. 633, is cited by appellee. The phase of the law to which the above quotation is pertinent is not before us on this appeal. Dismissal herein by the circuit judge was not on the ground that permission to sue was improvidently granted.

We think sufficient demand on the receiver was made by plaintiff. The detailed demand served prior to suit contains the following:

"The undersigned, in accordance with the escheat laws of the State of Michigan, under the authority of the probate court heretofore conferred upon him, hereby makes demand upon you for said deposits heretofore referred to in said order, that said deposits may be duly administered by the undersigned according to law."

In a declaration subsequently served on the receiver this phase of plaintiff's cause of action is set forth in similar language.

Appellee argues that to permit prosecution of plaintiff's suit to judgment is to cause the receiver of an insolvent bank to pay *in full* the escheat claims of the State, and thus violate the statute (3 Comp. Laws 1929, § 11962) which provides for payment by the receiver of "ratable dividends" on all proven claims. There need be no apprehension of such an obviously unjust result. The State's claim is not to be preferred to that of other creditors of the insolvent bank. (*Fry* v. *Equitable Trust Co.*, 264 Mich. 165, [90 A. L. R. 175].) Proper practice would bring the same result as though plaintiff had intervened and filed a claim in the receivership proceedings. This should be accomplished by the court, in the exercise of its inherent power (*Parks* v. *Goodwin & Hand*, 1 Mich. 35), staying execution on any judgment obtained by plaintiff and directing filing of the judgment as an adjudicated claim against the receiver on which he should pay "ratable dividends" as on other like claims.

Other questions presented by the briefs have been considered. We think they present no valid objec-

tion to the conclusion herein reached. The receiver stands in the position of the bank. Prior to receivership the bank had in its possession money which under statutory provisions constituted escheats to the State. The statute (3 Comp. Laws 1929, § 13464) provides the administrator "shall have the right to demand and receive * * * any deposits of money or securities of such missing person," and further that the administrator "shall have *all the rights of action* to reduce such money or securities to his personal possession and control as administrator." The State instituted these proceedings timely, and in an orderly way should be enabled to assert its rights against the receiver the same as it could have done against the bank had it remained solvent. Insolvency gave the other creditors of the bank no vested rights in the escheated funds of which the bank had possession, but which are now in the hands of its receiver.

For the reasons indicated herein judgment of the circuit court should be vacated and the case remanded for further proceedings in accordance with law.

Because the issue involved is of public importance, no costs will be awarded.

BUTZEL, SHARPE and TOY, JJ., concurred with NORTH, C. J.

FEAD, J. (*dissenting*). The action is to recover deposits made by sundry persons in the Pontiac Commercial & Savings Bank, now in receivership, on the ground that they have escheated to the State of Michigan.

May 4, 1936, the State public administrator filed petition in probate court for the appointment of plaintiff as administrator of assets of 30 persons who were depositors of the Pontiac Commercial & Sav-

ings Bank, but whose accounts were dormant as they had had no dealings with the bank with relation thereto for a period of more than seven years. Without any hearing, and on the same day, the probate court appointed plaintiff administrator of all such estates, in one proceeding, because they aggregated less than $500 in value (Act No. 45, Pub. Acts 1933), issued letters of administration to him, he made demand on defendant receiver for the deposits and the demand was refused. On motion, the court dismissed the action.

The petition was filed under the general escheat law, 3 Comp. Laws 1929, § 13455 *et seq.,* and additions and amendments thereto, being Acts Nos. 45, 171, Pub. Acts 1933.*

The court held Act No. 171, Pub. Acts 1933, in violation of the Constitution. We need not pass upon its validity, both because plaintiff states that he does not rely upon the act and because such determination is not necessary to decision of the case.

The principal question is whether Act No. 45, Pub. Acts 1933, permits appointment of administrator without preliminary notice of hearing.

Section 10 (3 Comp. Laws 1929, § 13464) of the general escheat act provides for appointment of administrator for the estate of a person who has deposited money or securities with another, has had no dealings with the depository in connection therewith for seven years, and when there is good reason to believe that he is dead. Section 13 (3 Comp. Laws 1929, § 13467) provides for administration of the estate of a person who disappears, whose whereabouts remain unknown for seven years, of whom no knowledge can be procured, who is then presumed to be dead, and whose heirs are not found.

---

* Act No. 40, Pub. Acts 1933, also, amended this act.—REPORTER.

By reference to sections 13457 and 13458, section 10 provides that the administrator shall be appointed in accordance with the general statutes covering administration of estates of deceased persons. These general statutes, sections 15602 and 15538, require notice to interested persons of the hearing on appointment of administrator by personal service 14 days before date of hearing or by publication for three weeks. In the administration of estates of persons presumed to be dead because of absence for seven years, publication of the notice of hearing of petition for administration must be had for four months. 3 Comp. Laws 1929, § 15629.

Act No. 45, Pub. Acts 1933, added two sections to the general escheat law. Section 10a provides that if there are no known heirs, it shall be sufficient proof for the purposes of escheat if it appears from reliable sources, or from the books of the depository, that the missing or disappeared person has had no dealing with the depository for a continuous period of seven years in regard to the deposit; and

"*Provided, however,* That within thirty days after the granting of administration upon the application by the attorney general or by the State public administrator, notice of the granting of such administration shall be published in the form of similar notices in the administration of the estates of deceased persons: *Provided further,* That additional publications shall be made once each calendar month for two months prior to the date of the final hearing for the closing of the estate: *Provided further,* That no other or additional proof or publication shall be required for the purposes of escheat under section ten and thirteen of this act except as herein provided."

Plaintiff contends that section 10a eliminates the necessity of other proof of death or disappearance

than a deposit seven years quiescent and of notice to interested parties of hearing on appointment of an administrator.   Defendant contends, with much force, that such construction would cause the act to violate the due process clause of the Constitution.

Plaintiff's construction is not demanded by the language of the act and ought not to be adopted because of its untoward possibilities.  It would not only destroy the harmony of probate practice adopted by the escheat law, both by providing the probate method of escheating property and by express terms, but would abrogate the fundamental right of a person to notice of a proceeding affecting his property before it is taken into the control of another, burdened with expense, and especially without providing a remedy for its recovery without loss to him.   Moreover, it would permit the appointment of an administrator of the estate of a living person without notice to him, actual or constructive, and for no other fault than that he was content to let his deposit rest in peace for seven years.  It so happened at bar.  Two of the alleged "departed" have lived continuously for 60 years in the community.  One of the "deceased" denies, on oath, that she is dead.

It will be noted that the proviso requires publication of notice of granting of administration in the same form as "similar notices" (*i. e.,* of the granting of administration) in the administration of estates of deceased persons.   In the absence of language definitely abrogating advance notice of hearing of the appointment of administrator, the evident construction of the last proviso is that it has no reference thereto but applies only to notices after the administrator is appointed.   This is particularly so because section 10a (Act No. 45, Pub. Acts 1933) does not purport to amend or modify section 10 (3

Comp. Laws 1929, § 13464), but is merely added thereto.

Consequently, we hold that Act No. 45, Pub. Acts 1933, does not obviate the necessity of personal or substituted notice of appointment of an administrator in accordance with the general statutes and plaintiff was not legally appointed.

Judgment should be affirmed, with costs.

WIEST and BUSHNELL, JJ., concurred with FEAD, J. POTTER, J., did not sit.